UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| J.V. & Sons Trucking, Inc., | Case No. 20-cv-2538 (KMM/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Asset Vision Logistics, LLC, | |
| Defendant. | |

This case involved a contract dispute between a hauling company and a logistics broker. The hauling company, Plaintiff J.V. & Sons Trucking, Inc. ("JVS"), hauled loads of crude oil for oil companies on behalf of the logistics broker, Defendant Asset Vision Logistics, LLC ("AVL"). On September 15, 2022, the Court denied AVL's motion for summary judgment and granted in part and denied in part JVS's motion for summary judgment. [ECF No. 150 ("Summary Judgment Order").] On April 11, 2023, the Clerk of Court entered Judgment in the amount of $334,940.08 in favor of JVS. JVS now moves for an award of attorneys' fees, pre-judgment interest, and post-judgment interest. [ECF No. 176.] As discussed below, JVS's motion is granted in part and denied in part.

**I.   Underlying Facts**

The relevant factual background is set forth in greater detail in the Summary Judgment Order and is repeated here only to provide the context necessary for understanding the dispute addressed in this Order. In 2019, JVS began using AVL as a logistics broker for hauling loads of crude oil on behalf of third-party oil companies. JVS

1

hauled and invoiced AVL for hundreds of these loads. Initially, AVL paid JVS's invoices on a typical 15-day schedule. AVL sought to alter that payment arrangement and proposed that the parties agree to the terms of a QuickPay Agreement ("QPA"). The parties executed the QPA in July 2019.

As explained in the Summary Judgment Order, the QPA states that it governs the general terms and conditions under which JVS may offer and sell its receivables (i.e., invoices) to AVL. The QPA establishes an advance payment schedule. AVL agreed to pay JVS an advance of 90% of an invoice prior to receiving payment from AVL's third party client. The remaining 10% of the invoice was divided between AVL and JVS within 10 days after AVL received the client's payment. In exchange for advancing 90% of the invoice, AVL would deduct a 3% fee, and JVS would receive the remaining 7% balance. The QPA included other provisions relevant to the parties' dispute, including an exclusivity clause, a choice-of-law clause, a non-solicitation clause, and a non-disclosure clause.

After the parties executed the QPA, JVS performed hundreds of hauls for AVL over the next few months. But the relationship between the companies began to deteriorate. In January 2020, JVS hauled loads for a different logistics broker. This work included hauling loads for a third-party crude oil company that had also been one of AVL's clients while JVS was hauling for AVL. JVS continued to haul for AVL in the early months of 2020, but AVL stopped paying JVS for the loads it hauled. On July 1, 2020, JVL commenced this lawsuit by serving AVL with a Texas state court complaint seeking to enforce the terms of the parties' agreements and to compel AVL to pay JVS

for the loads it hauled. On July 27, 2020, AVL removed the case to the United States District Court for the Northern District of Texas. On December 115, 2020, the case was transferred to the District of Minnesota.

In the Summary Judgment Order, this Court held that, under Texas law, both the non-solicitation and non-disclosure provisions of the QPA were unenforceable restraints of trade as a matter of law. For that reason, the Court denied AVL's motion seeking summary judgment on JVS's contract claims. Specifically, the Court concluded that the non-solicitation provision was an impermissible restraint of trade and the non-disclosure provision lacked any reasonable restrictions as to time, geographical area, and scope of activity. The Court granted JVS's motion for summary judgment on its breach of contract claims because the undisputed evidence showed that AVL agreed to pay JVS for the hauls it performed on AVL's behalf at the prices established in the parties' rate sheets; JVS performed its obligations under the hauling agreements; and AVL failed to pay JVS's invoices for the loads it hauled.

JVS later dismissed its remaining claim that was not resolved by the Summary Judgment Order and the Court directed the entry of Judgment on April 10, 2023. On April 11, 2023, the Clerk entered Judgment in favor of JVS in the amount of $334,940.08. JVS filed its motion for attorney's fees and pre-judgment and post-judgment interest on April 28, 2023.

**II.    Analysis**

JVS seeks attorneys' fees under the Texas Covenants Not to Compete Act ("CNCA"), Tex. Bus. & Com. Code Ann. § 15.50, et seq. JVS argues that it is entitled to

recover its fees under the CNCA because it was forced to defend itself against AVL's attempted enforcement of unlawful contract provisions. JVS further argues that it should receive pre-judgment interest accruing from July 1, 2020 through the date that Judgment was entered, as well as post-judgment interest in an amount yet to be determined.

AVL argues that the Court should deny JVS's motion as untimely because it was brought after the deadline established by Fed. R. Civ. P. 54. AVL further argues that JVS is not entitled to fees under the CNCA because the statutory requirements for recovery of fees have not been met. In addition, AVL argues that JVS should receive no pre-judgment interest because its own conduct delayed resolution of this case, but if the Court grants the motion for pre-judgment interest, AVL seeks various deductions. Finally, AVL contends that JVS's request for post-judgment interest is premature.

For the reasons explained below, JVS's motion is denied to the extent it seeks recovery of attorney's fees, is granted to the extent it seeks pre-judgment interest, and it is held in abeyance with respect to post-judgment interest.

### A. Timeliness

AVL first argues that the Court should deny JVS's motion for attorneys' fees as untimely because it was filed after the applicable deadline. Although JVS filed the motion after the deadline, the Court will not deny it as untimely. JVS filed the motion promptly after Judgment was entered, the delay was minimal, there was no prejudice to AVL, and there is no suggestion that JVS failed to act in good faith.

Under Fed. R. Civ. P. 54(d)(2)(B), a motion for attorney's fees must be made within 14 days after the entry of judgment. Here, the Judgment was entered on April 11,

4

2023, and as a result, JVS's motion for attorney's fees should have been filed on or before April 25, 2023. JVS did not file the motion until April 28, 2023, three days after the deadline.

Even though JVS filed the motion three days after the deadline, the Court can extend the deadline based on a finding of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 856–57 (8th Cir. 2010); *Leidel v. Ameripride Servs., Inc.*, 322 F. Supp. 2d 1206, 1210 (D. Kan. 2004) (extending a deadline under Rule 54 based on a finding of excusable neglect). In evaluating excusable neglect, courts evaluate "all relevant circumstances" and address four factors in particular: "(1) the possibility of prejudice to [the other party]; (2) the length of [the proponent's] delay and the possible impact of that delay on judicial proceedings; (3) [the party's] reasons for the delay, including whether the delay was within its reasonable control; and (4) whether [the party] acted in good faith." *Sugarbaker v. SSM Health Care*, 187 F.3d 853, 856 (8th Cir. 1999) (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)).

Here, the circumstances weigh in favor of excusable neglect. First, the record does not indicate, and AVL does not argue, that it would be materially prejudiced by the delay. Additionally, JVS's delay was not lengthy and the fee dispute was presented promptly enough to achieve the purposes of Rule 54's time limitation. *Sapp v. City of Brooklyn Park*, No. CV 15-1589 (DWF/LIB), 2017 WL 5157447, at *3 (D. Minn. Nov. 6, 2017) ("One of the purposes behind Rule 54(d)(2)(B)'s [time] limitation is to resolve fee disputes efficiently, while the services performed are freshly in mind.") (internal

5

quotations omitted). Here, the delay was only a few days and plaintiff's counsel had been in communication with defense counsel for months after the Summary Judgment Order was issued regarding the forthcoming request for attorney's fees and interest. [Gleekel Decl., ECF No. 189.] Finally, there is nothing in the record to suggest that JVS failed to act in good faith, and plaintiff's counsel communicated with defense counsel and the Court about the timing of the motion, without objection. [*Id.*]

Accordingly, the Court finds that any neglect by JVS is excusable under the circumstances, and the Court will consider the merits of JVS's motion.

### B. Recovery of Fees under the Texas Statute

JVS argues that the Court should award it attorney's fees under the Texas CNCA. AVL argues that the CNCA's fee-shifting provision does not apply to the circumstances of this case.[1] The CNCA provides that courts have discretion to award attorney's fees under the following circumstances:

> ***If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services***, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant.

---

[1] The parties do not dispute that the Court should apply Texas law on this issue.

Tex. Bus. & Com. Code Ann. § 15.51(c) (emphasis added).

According to Texas courts, to recover attorney's fees under this provision, the primary purpose of the contract at issue must be to obligate the party subject to the unreasonable non-compete to provide "personal services." *Franlink, Inc. v. GJMS Unlimited, Inc.*, 401 S.W.3d 705, 711 (Tex. App. 2013) ("[S]ubsection (c) provides for an award of attorney's fees in a single circumstance: *In the context of a personal-services agreement*, attorney's fees may be awarded to a promisor who satisfies certain evidentiary requirements in defending against enforcement of an unreasonable covenant.") (emphasis added); *Jackson v. Ali Zaher Enterprises, LLC*, No. 05-18-00288-CV, 2019 WL 698019, at *2 (Tex. App. Feb. 20, 2019) (indicating that the "personal services" showing is a prerequisite to the recovery of fees).

AVL argues that the unlawful covenants at issue in this case were not ancillary to any agreement that had such a purpose. The Court agrees. The unlawful non-solicitation and non-disclosure provisions that AVL sought to enforce are found in the QPA. But the primary purpose of the QPA was not to obligate JVS to render any "personal services." Moreover, even if the QPA is considered in conjunction with the hauling agreements under which JVS hauled loads for AVL, there is still no basis to conclude that the primary purpose of those agreements was to obligate JVS to provide "personal services."

The CNCA does not define the term "personal services," but Texas' appellate courts have generally applied the fee-shifting provision of § 15.51(c) in situations where employers seek to unreasonably enforce unlawful non-compete provisions against employees. For example, in the few published decisions discussing § 15.51(c), the Texas

7

Court of Appeals has broadly referred to the provision as one allowing employees to recover from employers. *Franlink*, 401 S.W.3d at 710 (citing § 15.51(c) and describing it as a fee-shifting provision "in favor of employees if an employer seeks to enforce a covenant to an extent greater than was necessary to protect its goodwill or other business interest"); *see also Ginn v. NCI Building Sys. Inc.*, 472 S.W.3d 802, 825 (Tex. App. 2015) (stating that "[u]nder section 15.51, an employee, not an employer, is entitled to recover attorney's fees in an action to enforce a covenant not to compete" and citing § 15.51(c) as providing that a "court may award employee 'costs, including reasonable attorney's fees,' but containing no provision for award of fees to employer"); *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 645 (Tex. App. 2010) ("Section 15.51(c) only provides for an award of attorney's fees to an employee in limited circumstances; it makes no provision for an award of fees to an employer."). Shifting fees only in those cases where an employer acts unreasonably in enforcing a restraint on trade is consistent with the public policy reflected in Texas statutes—it recognizes the typical imbalance of resources that the two sides can bring to bear in a dispute over former employees' post-separation competitive work, protects an individual's ability to work, and safeguard's employers' investment in their development of trade secrets and employee training. *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768–71 (Tex. 2011) (discussing Texas' public policy goals in enforcement of covenants not to compete).

And although the parties' briefing and the Court's own research identify no case in which Texas courts have explicitly limited the availability of fees under § 15.51(c) to the employment context, courts have identified employment agreements as contracts having

the primary purpose of obligating employees to provide personal services. *See TENS Rx Inc. v. Hanis*, No. 09-18-00217-CV, 2019 WL 6598174, at *4 (Tex. Ap. Dec. 5, 2019) (stating that a non-compete provision related to the employee's obligation to render personal services in a dispute over an employment agreement); *Dickerson v. Acadian Cypress & Hardwoods, Inc.*, No. 09-13-00299-CV, 2014 WL 1400659, at *7 (Tex. App. Apr. 10, 2014) (sales employee's employment agreement was deemed a personal services contract); *Am. Surgical Assistants, Inc. v. Villareal*, No. 13-19-00221-CV, 2020 WL 6052550, at *6 (Tex. App. Oct. 8, 2020) (stating that the unlawful confidentiality agreement was part of an employment agreement, which was "indisputably for the rendering of personal services").

  JVS does not point the Court to any decision, reported or otherwise, in which a court has found that an agreement other than an employment agreement was deemed to be one for the provision of "personal services" within the meaning of § 15.51(c). This Court's own research has similarly uncovered no such case. And cases in which courts have found the "personal services" requirement was not met have all been outside the context of an employment agreement. *Houston Metro Ortho and Spine Surg., LLC v. Juansrich, Ltd.*, No. 14-19-00732-cv, 2021 WL 2799643, at *11 (Tex. App. July 6, 2021) (finding that the primary purpose of an LLC agreement containing an unreasonable noncompete clause was not for rendering personal services but to "to develop, own, and operate an ambulatory surgical center" set forth requirements for membership in the company, management of the center, and distribution of profits); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 677–78 (S.D. Tex. 2010) (finding the

9

primary purpose of a Common Stock Purchase Agreement dictating the conditions for selling stock was not for rendering personal services); *see also Leon's Fine Foods, Inc. v. McClearin*, No. 05-97-01198-CV, 2000 WL 277135, at *3 (Tex. App. Mar. 15, 2000) (finding that an employee's termination agreement, which contained an unlawful non-compete covenant, was not part of the underlying employment agreement, and, as a result, the covenant was not ancillary to an agreement that had the primary purpose of obligating the defendant to perform personal services).

      Here, the QPA itself does not have the primary purpose of obligating JVS to perform personal services for AVL. Rather, the primary purpose of the QPA was to establish an advanced payment schedule by allowing AVL to purchase JVS's receivables prior to receiving payment from the third-party client, in exchange for a 3% fee. By its terms, JVS would receive prompt payment from AVL of 90% of the total it would ultimately be due from AVL's client for a hauled load. AVL would then promptly deduct the 3% fee upon receiving payment from the client and remit the remaining balance to JVS. Thus, standing alone, the QPA does not have the primary purpose of obligating JVS to perform any services at all, let alone personal services.

      Of course, as discussed in the Summary Judgment Order, the QPA does not really stand alone. Instead, it was tied to future factoring agreements, which were the invoices JVS generated for loads hauled on behalf of AVL's clients. JVS's argument is that the non-solicitation and confidentiality provisions of the QPA that the Court found to be unenforceable were "ancillary to" the broader contractual context that did relate to JVS providing load-hauling services for AVL and AVL's clients. It suggests that the

agreements at issue in this case satisfy § 15.51(c)'s "personal services" requirement. However, the Court disagrees.

Even assuming that the non-solicitation and non-disclosure provisions the Court found unenforceable are ancillary to the contracts under which JVS agreed to perform load-hauling services for AVL, nothing in the record suggests that those are "***personal*** services" within the meaning of the CNCA. Given its most natural reading, the term "personal services" refers to services that are performed by a particular person or individual. In its briefing, JVS largely ignores the "personal services" language in the statute and substitutes the phrase "professional services." But JVS does not point to any case interpreting "personal services" under § 15.51(c), such as those performed by an employee, to be synonymous with "professional services" performed by one corporate entity pursuant to its agreement with another. JVS does not offer any analysis of the CNCA's text to explain why the load-hauling work that is at issue here would qualify as "personal services." A straightforward reading of the statute's language does not support such a conclusion. And reasoning by analogy to the employment context where the fee-shifting provision applies does not obviously lead to the conclusion that JVS's hauling of crude oil for AVL's clients constitutes "personal services." The Court finds that it does not.

For these reasons, the Court finds that the unlawful covenants at issue in this case are not ancillary to an agreement that had the primary purpose of obligating JVS to render personal services. Consequently, JVS cannot recover attorney's fees under Tex.

Bus. & Com. Code Ann. § 15.51(c). JVS's motion for recovery of attorney's fees is therefore denied.[2]

### C. Pre-Judgment Interest

JVS requests an award of pre-judgment interest on the $334,940.08 in contract damages that have been awarded. AVL argues that JVS's request for pre-judgment interest should be denied because JVS originally filed this case in Texas, contravening the Minnesota forum-selection provision in the QPA. Alternatively, AVL contends that any award of pre-judgment interest should be limited to the period after this case was transferred to the District of Minnesota and further reduced because AVL was forced to spend more than $20,000 to secure the transfer. For the reasons explained below, the Court concludes that JVS is entitled to pre-judgment interest.

The parties agree that state law governs the award of prejudgment interest in this diversity case and that the Court should apply Texas law. *Kelley as Tr. for PCI Liquidating Tr. v. Boosalis*, 974 F.3d 884, 901 (8th Cir. 2020) (state law controls for resolving questions of prejudgment interest). "Prejudgment interest is compensation allowed by law as additional damages for lost use of money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Ventling v. Johnson*, 466 S.W.3d 143, 153 (Tex. 2015) (quotations omitted). In Texas, "[w]hen no statute controls, an award of pre-judgment interest is governed by equitable principles,

---

[2] Because the Court has concluded that JVS cannot recover attorney's fees under § 15.51(c) due to the absence of an agreement for "personal services," the Court does not address the parties' remaining arguments about whether JVS has established the other requirements for obtaining an award of fees under the statute.

12

and the decision to award pre- judgment interest falls within the trial court's discretion." *Patriot Contracting, LLC v. Shelter Prods., Inc.*, 650 S.W.3d 627, 659 (Tex. App. 2021). The Court allows an award of pre-judgment interest on the total amount of damages because of the breach to avoid encouraging gamesmanship, expense, and delay. *See Hand & Wrist Center of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 722 (Tex. App. 2013).

The Texas Supreme Court has stated that a breach of contract claim that accrues before suit is filed begins to earn prejudgment interest "on the earlier of (1) 180 days after the date a defendant receives written notice of the claim or (2) the date suit is filed." *Johnson & Higgins of Tex. Inc., v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998) (adopting the statutory method of accrual for common law prejudgment interest on contract claims); *see also Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 452–53 (Tex. App. 2016). Pre-judgment interest accrues from the accrual date until the day preceding the date of the judgment. *See* Tex. Fin. Code Ann. § 304.104. The formula for calculating pre-judgment interest is as follows: "Amount x Interest Rate x Time. Time is calculated by counting the number of days that have elapsed and dividing that by the number of days in a year (365)." *Hand & Wrist Ctr. of Houston*, 401 S.W.3d at 716 n.4 (identifying formula and calculating interest using the amounts from the judgment).

JVS does not seek interest for claims based on an accrual date earlier than July 1, 2020, the date the suit was commenced, and aside from its delay argument discussed below, AVL does not argue that a different date would otherwise apply. Judgment was entered on April 11, 2023, and the parties agree that the judgment rate for the relevant

13

period at 7.75%. The time between July 1, 2020 and April 11, 2023 is 2 years and 284 days, or 2.78 years. Inserting the numbers from the Judgment using the formula discussed above, the interest calculation is as follows: $334,940.08 x .0775 x 2.78 = $72,162.84. *See id.*

AVL asserts that the Court should reduce that figure by refusing to award pre-judgment interest for the entire time the case was pending before it was transferred to this District. In addition, AVL contends that the Court should deduct $20,000 from the award of pre-judgment interest because AVL was forced to incur that amount in fees and costs to obtain the transfer. The Court declines to adopt the deductions requested by AVL.

It is true that JVS's decision to originally file the case in Texas contributed to a period in which the Texas court was focused on where the suit should have been filed, rather than on its merits. And it is also true that if JVS had not commenced this case in Texas, AVL would likely not have spent legal fees on moving to transfer the case under the forum-selection clause. However, "like other contractual rights, a forum selection clause may be waived." *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016). It was AVL who chose to seek enforcement of the forum-selection clause in the Texas courts. AVL was certainly entitled to take that step, and the Court does not suggest otherwise here. But AVL elected to pursue its rights under the forum-selection clause and it chose to pay its lawyers to obtain the transfer. Moreover, it was not a foregone conclusion that JVS's claims were subject to the forum-selection clause, and JVS was just as entitled to try and convince the Northern District of Texas that its own claims were not covered by the clause. Indeed, in deciding that the forum-selection clause applied, the

Texas court relied, in part, on the fact that AVL had asserted a counterclaim that introduced the QPA into the litigation. The mere fact that JVS did not prevail in its efforts to convince the Texas court otherwise does not mean that JVS bears full responsibility for lengthening the period for which pre-judgment interest accumulates or for AVL incurring fees and costs in connection with its motion to transfer. Accordingly, the Court declines AVL's invitation to reduce the award of pre-judgment interest.

Accordingly, applying Texas law and considering equitable principles, the Court finds that JVS is entitled to an award of $72,162.84 in pre-judgment interest.

### D. Post-Judgment Interest

Finally, AVL argues that it would be premature for the Court to award and calculate post-judgment interest at this stage in the litigation because post-judgment interest accrues until the judgment is paid. JVS concedes that it is too soon to calculate the total post-judgment amount owed to it, but JVS asserts that is not premature to award the remedy itself.

"Under 28 U.S.C. § 1961(a), in diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law." *Boston Old Colony Ins. Co. v. Tiner Assoc., Inc.*, 288 F.3d 222, 234 (5th Cir. 2002); *see also Nissho-Iwi Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 622-24 (8th Cir. 1988) (same). The prevailing party has a right to post-judgment interest under 28 U.S.C. § 1961. Post-judgment interest begins to accrue on the day judgment is entered and accrues on a plaintiff's total award, including costs and attorney's fees, until the judgment is satisfied. *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991).

15

Under Section 1961(a), post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). The parties agree that the rate as of April 7, 2023, was 4.53%.

Here, based on the parties' briefing, it appears that there is no dispute that JVS will, at some point, be entitled to an award of post-judgment interest. Although JVS suggests that the Court ought to issue an Order stating that the remedy is available, it does not suggest that if the Court fails to do so, JVS would somehow be precluded from recovering post-judgment interest. Moreover, the parties appear to agree that, at this time, it is premature for the Court to issue an Order awarding any post-judgment interest. Accordingly, at this time, the Court will hold the issue of post-judgment interest in abeyance. The parties are directed to meet and confer as soon as practicable after the date of this Order to discuss when the judgment may be satisfied and when the issue of post-judgment interest may be resolved. The parties are instructed to advise the Court, by a joint email to the undersigned's chambers, no later than 30 days from the date of this Order about the result of their conversations concerning post-judgment interest. The Court encourages the parties to make every reasonable effort to resolve any disagreements about this issue among themselves without the need for further judicial intervention. If they are unable to reach such an agreement, the parties should consider how any disputed issues concerning post-judgment interest can be presented to the

undersigned in a streamlined manner, such as opposing letter briefs or otherwise, and present a reasonable proposal for the same to the Court.

### III.   Order

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Plaintiff's Motion for Attorney's Fees and Pre-Judgment Interest [ECF 176] is **GRANTED IN PART and DENIED IN PART** as set forth in this Order.

2. Plaintiff's request for attorney's fees is denied.

3. Plaintiff is entitled to an award of pre-judgment interest in the amount of $72,162.84.

Date: November 14, 2023              *s/Katherine Menendez*
                                     Katherine Menendez
                                     United States District Judge